The **PROTECTOSEAL COMPANY,**
Plaintiff-Appellee,

v.

**Charles BARANCIK, Defendant-Appellant.**

No. 72–1650.

United States Court of Appeals,
Seventh Circuit.

Argued May 31, 1973.

Decided Sept. 5, 1973.

Myron Lieberman, David C. Roston, Chicago, Ill., for defendant-appellant.

Charles T. Martin, Chicago, Ill., for plaintiff-appellee.

Before PELL and STEVENS, Circuit Judges, and REYNOLDS,* District Judge.

STEVENS, Circuit Judge.

For the first time since the enactment of the Clayton Act in 1914, this court

---

* Chief District Judge John W. Reynolds of the United States District Court for the Eastern District of Wisconsin sitting by designation.

must decide a case arising under § 8's prohibition against interlocking corporate directorates.[1] In an action brought under § 16 [2] by a corporate plaintiff, the district court entered summary judgment ordering the defendant director to resign. The issues raised by defendant's appeal are (1) whether the corporation had standing to challenge his status; (2) whether the statute was violated; (3) whether appellant was entitled to additional discovery; and (4) whether the relief granted was excessive.

Plaintiff corporation is engaged in the manufacture and sale of various sizes and kinds of safety containers, faucets, fittings and accessories for flammable liquids. Justrite Manufacturing Company, a competitor whose factory and sales headquarters, like the plaintiff's, are located in the Chicago metropolitan area, manufactures and sells a competing line of products. The two companies compete for the same business. Defendant testified that Justrite "did approximately a million and a half dollars worth of business" in the items and areas of competitive overlap with the plaintiff.[3] Plaintiff alleged—but defendant lacked sufficient information to admit or deny—that if the sales of plaintiff and Justrite were combined, their total sales would exceed 50% of the total sales in the United States of the line of safety containers and related products described in the complaint.

Defendant and his wife are directors, as well as the sole owners, of Justrite. In September of 1971, after purchasing 7,913 shares representing 16.2% of plaintiff's outstanding stock, defendant was elected a director of plaintiff.[4] Thereafter, presumably after receiving the advice of counsel, plaintiff made a written demand for defendant's resignation. Defendant refused to resign and this litigation ensued.

After discovery was initiated but before it was completed, the district court granted summary judgment for plaintiff. It enjoined defendant from being a director of plaintiff or voting any of his shares for the election of directors and awarded costs, including attorney's fees, to plaintiff.

1. "No person at the same time shall be a director in any two or more corporations, any one of which has capital, surplus, and undivided profits aggregating more than $1,000,000, engaged in whole or in part in commerce, . . . if such corporations are or shall have been theretofore, by virtue of their business and location of operation, competitors, so that the elimination of competition by agreement between them would constitute a violation of any of the provisions of any of the antitrust laws. . . ." 38 Stat. 730, 15 U.S.C. § 19.
   The first sentence of Mr. Justice Clark's opinion for the Court in United States v. W. T. Grant Co., 345 U.S. 629, 630, 73 S. Ct. 894, 97 L.Ed. 1303, gives some indication how infrequently these cases arise.

2. "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: *Provided*, That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of the Act to regulate commerce, approved February fourth, eighteen hundred and eighty-seven, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission." 38 Stat. 737, 15 U.S. C. § 26.

3. Record at 50. The size of plaintiff's business is not shown, but the allegation that it has capital, surplus and undivided profits aggregating more than $1,000,000 is admitted. Thus, the minimum size requirement described in § 8 is met.

4. Plaintiff's board consists of seven directors; cumulative voting of 16.2% of the shares is sufficient to elect at least one director.

## I.

█ Defendant contends that plaintiff's standing depends on the resolution of disputed issues of fact, and therefore it was error to enter summary judgment. Plaintiff's complaint had alleged injury in the form of exposure to possible treble damage liability to third parties who might charge that plaintiff and Justrite were engaged in a conspiracy in restraint of trade, as well as injury by reason of defendant's access to confidential information. Defendant contends that the potential liability is illusory and denies any intent to receive or utilize confidential information concerning plaintiff's business.

██ We find it unnecessary to appraise these factual matters for we have no doubt that a corporation has standing to request a federal court to remove a director whose service on its board violates an Act of Congress. The corporation itself is a potential defendant in litigation which the government may initiate to enforce § 8. See United States v. W. T. Grant Co., 345 U.S. 629, 630, 634 n. 9, 73 S.Ct. 894, 97 L.Ed. 1303. Even if that were not the case, the corporation surely has sufficient interest in the legality of its directors' tenure to justify litigation such as this. There is no merit to defendant's standing argument; if it is illegal for him to serve on plaintiff's board, plaintiff has a right to have him removed.

## II.

█ Defendant contends that the undisputed facts do not establish a violation of § 8. The validity of this argument turns on the proper construction of the statute. Plaintiff argues, and it is apparently undisputed, that a price-fixing or customer allocation agreement between it and Justrite would violate § 1 of the Sherman Act. Defendant avoids this contention by arguing that, as a matter of law, § 8 is not violated unless a merger of the two companies would be illegal under § 7. Since the allegation that the two companies comprise 50% of the market is denied, and the admitted facts do not establish that a merger would be unlawful, defendant's construction of § 8 would preclude summary judgment.

Defendant's argument focuses on the statutory description of the nature of the competition which must exist between two corporations sharing an interlocking director before § 8's prohibition applies. They must be "competitors, so that the elimination of competition between them would constitute a violation of the provisions of any of the antitrust laws." Defendant emphasizes the reference to "elimination of competition," insisting that the words connote a transaction such as a merger and pointing out that they differ from the "to substantially lessen competition" language included in § 7.[5]

We draw a different inference from this language. *Accord*, United States v. Sears, Roebuck & Co., 111 F.Supp. 614 (S.D.N.Y.1953). First, we note that if Congress had merely intended to prohibit interlocks between corporations that could not lawfully merge, that intent could have been simply expressed. Similarly, if the word "agreement" in § 8 were intended to be limited to transactions covered by § 7, the clause would not end with a reference to a violation of "any of the antitrust laws." Indeed, the word "agreement" itself encompasses more than acquisitions; it includes ongoing agreements between ostensible

---

5. The first paragraph of § 7 as originally enacted in 1914 provides:
  "That no corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital of another corporation engaged also in commerce, where the effect of such acquisition may be to substantially lessen competition between the corporation whose stock is so acquired and the corporation making the acquisition, or to restrain such commerce in any section or community, or tend to create a monopoly of any line of commerce." 38 Stat. 731–732.
Section 7, of course, has since been amended, see 15 U.S.C. § 18, but § 8 has not.

competitors as well. Finally, in the context of § 8, the reference to "elimination of competition by agreement," as opposed to the reference in § 7 to a mere lessening of competition, actually has the effect of broadening the coverage of § 8; for there are obviously competitive situations in which a lessening of competition might be entirely lawful, whereas the total elimination of that competition would be a violation of one or more provisions of the antitrust laws. The latter phrase therefore describes more competitive situations than the former and gives § 8 a broader coverage than § 7.

■ As we read the relevant paragraph of § 8, it establishes rather simple objective criteria for judging the legality of an interlock. First, of course, is the requirement that one of the corporations have a net worth of at least $1,000,000; second, the reference to competition "between them," which apparently contemplates a horizontal market relationship between the companies, implies that a market-wide analysis of competition is unnecessary; and third, the broad reference to an agreement which would violate *any* of the antitrust laws indicates that interlocks between companies that are prohibited from entering into inherently illegal agreements are covered.

We do not believe Congress intended the legality of an interlock to depend on the kind of complex evidence that may be required in a protracted case arising under § 7. On the contrary, the statute reflects a public interest in preventing directors from serving in positions which involve either a potential conflict of interest or a potential frustration of competition. We hold that the record adequately establishes a violation of § 8.

### III.

■ It follows from our appraisal of the standing issue and our construction of § 8 that it was not error for the district court to enter summary judgment before discovery was completed. The areas of inquiry defendant sought to explore would only be relevant if its view of the law on these issues were correct.

### IV.

■ Defendant argues that a violation of § 8 does not support the portion of the court's order enjoining him from voting his shares for the election of directors. The district court had power to do more than enjoin the specific violation found, see, *e. g.*, United States v. Bausch & Lomb Co., 321 U.S. 707, 724, 64 S.Ct. 805, 88 L.Ed. 1024, and we think the relief granted was warranted by the record. This conclusion is supported by the repeated approval of comparable relief in cases arising under § 7. See, *e. g.*, Crane Co. v. Briggs Mfg. Co., 280 F.2d 747, 750 (6th Cir. 1960); Allis-Chalmers Mfg. Co., v. White Consolidated Industries, Inc., 414 F.2d 506 (3rd Cir. 1969); Vanadium Corp. of America v. Susquehanna Corporation, 203 F.Supp. 686 (D.Del.1962); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2d Cir. 1953).

■ Finally, defendant objects to the portion of the order directing him to pay plaintiff's attorney's fees. This objection is well taken. Plaintiff has not proven any pecuniary injury which would entitle it to a recovery under § 4 of the Clayton Act. That section authorizes the recovery of a reasonable attorney's fee, but there is no such express authorization in § 16, the section under which this action was brought. We believe this case should be treated in the customary manner; plaintiff should accept the normal burden of compensating its own counsel. Of course, costs, including the costs of this appeal, should be taxed against defendant.

The order of June 30, 1972, shall be modified to eliminate the award of fees; in all other respects the order is

Affirmed.